IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

MAI V. LECHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN MAI, APPELLANT, AND MM NE, L.L.C., INTERVENOR-APPELLANT,

V.

MICHAEL LECHER AND DIANA LECHER, HUSBAND AND WIFE, ET AL., APPELLEES.

Filed August 9, 2022.    No. A-21-731.

Appeal from the District Court for Dawes County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Terry Curtiss, of Curtiss, Moravek & Curtiss, P.C., L.L.O., and Victor E. Covalt III for appellant and intervenor-appellant.

Jamian J. Simmons, of Smith, King, Simmons & Conn, P.C., for appellees Michael Lecher and Diana Lecher.

Steven W. Olsen, of Simmons Olsen Law Firm, P.C., L.L.O., for appellees David A. Shumway and Jan Marie Shumway.

Amanda M. Vogl, for appellee Dawes County.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

John Mai brought a complaint to quiet title on certain real property occupied by him following his assertions of trespass by adjacent landowners on his private driveway. Michael Lecher and Diana Lecher, David A. Shumway and Jan Marie Shumway as individuals and trustees (collectively the Shumways), and Dawes County, Nebraska, counterclaimed, all alleging that the road claimed by Mai to be his private driveway was in fact an open public road established as County Road 50 in 1887. On the parties' competing motions for summary judgment, the Dawes

County District Court granted summary judgment in favor of the appellees and against Mai, finding that County Road 50 had been properly established under applicable Nebraska law. The issue of the exact location of County Road 50 was reserved for trial. Following trial, the court determined that County Road 50 was located along the common section lines between Mai's property and adjacent tracts of land. Mai appeals; we affirm.

## II. BACKGROUND

This appeal concerns the operative effect, if any, of a petition granted by the Dawes County Board of County Commissioners on April 23, 1887, regarding the establishment of County Road 50 in Dawes County. Before we address the procedural history of this case, we will set forth the factual background concerning the parties, the acts of the county board in 1887, and the recent history that led to the filing of this case.

### 1. FACTUAL BACKGROUND

#### (a) Parties and Real Property

We begin with a brief description of the parties' real property at issue in this case. As a preliminary note, all parcels of land involved in this matter lie within Township 32 North, Range 49 West of the 6th principal meridian, Dawes County, Nebraska. The primary dispute in this case centers on an alleged public road that runs north and south along the section line between Section 11 and Section 12. Section 11 lies west of Section 12. Section 11, in which Mai owns the northeast and southeast quarters, borders the west side of the disputed road. Section 12, in which the Lechers and Shumways own separate plots of land in the northwest and southwest quarters respectively, borders the east side of the disputed road. Buttermilk Road runs east and west along the north borders of both Sections 11 and 12. Appendix A attached to the opinion provides a general layout of the sections referenced.

Dawes County was established as a county of Nebraska in 1885, and at all times relevant to this action has existed as a body politic and had authority, by and through the county board as authorized by legislation, to supervise public roads located within the county with the authority to establish and maintain them within the bounds of the enacting legislation.

We also briefly note that MM NE, LLC, a Nebraska limited liability company of which Mai is a member, presently owns real estate in Section 12 referred to by the parties as the "Amack Place." The Amack Place is bordered by the Lechers' property to the north and the Shumways' property to the south, and its western boundary also borders the east side of the disputed road. MM NE, LLC, intervened in this case and joined in Mai's notice of appeal and brief, but no separate argument was made specific to it.

#### (b) 1887 Petition to Establish County Road 50

According to records provided by the Dawes County Clerk, a petition was filed on April 22, 1887, by Albert Clemens and 26 other petitioners requesting the Dawes County Board of County Commissioners to establish a public road commencing at the northeast corner of Section 16 running east to the southeast corner of Section 11 then north to the northeast corner of Section 11. The petitioners consisted of county electors and landowners who owned land within 5 miles

of the proposed county road, including real property that would be burdened by the establishment of a public road. The petition further contains a handwritten note by Electa Younglove that reads:

> I hereby give the right-of-way for road to keep upon hill at S.E. corner of Sec 11 in order to save expense of grading on the hill.

The petition does not list an amount given by the petitioners as a deposit for the expenses related to the road or the commissioner appointed by the board to determine the necessity of a public road. Additional writing on the envelope is subject to dispute between the parties in this appeal. The writing is difficult to read, and the parties in this appeal purport that the writing states that the road was either "Allowed as Preaged" or "Allowed as Prayed."

Upon the motion of the Dawes County Board of Commissioners, the petition was granted on April 23, 1887. The granting of the petition was recorded in the Dawes County "Road Record" as County Road 50. A copy of the "Road Record" provided by the Dawes County Clerk lists the legal description of County Road 50 as follows:

> Commencing at the [northeast] cor[ner] [of] Sec.16 T.32 R.49 running [east] to the [southeast] cor[ner] of Sec.11 T.32 R.49; thence [north] to the [northeast] cor[ner] of Sec.11 T.32 R.49.

The "Road Record" further contained a "Road Plat Record" in which the location of County Road 50 was platted. A copy of the plat map provided by the Dawes County Clerk indicated that County Road 50 followed the section lines from the northeast corner of Section 16 to the southeast corner of Section 11 and then to the northeast corner of Section 11.

In addition to the "Road Record," the "Chadron Democrat," a newspaper in circulation in Dawes County in 1887, published a notice on April 28, 1887, that the Dawes County Board of County Commissioners granted the petition to establish County Road 50. A photograph provided by the Dawes County Historical Museum, received as part of exhibit 52, read as follows:

> Petition of Albert Clemens and others for a road commencing at the northeast corner of sec[tion] 16-32-49, thence running east to southeast corner of section 11-32-49, thence north to the northeast corner of sec[tion] 11-32-49, was on motion granted.

The record does not include further publications regarding the opening of County Road 50, nor does the record include any filed claims for damages as a result of the opening of County Road 50.

(c) 1986 Resolution to Vacate Part of County Road 50

On October 21, 1986, the Dawes County Board of Commissioners held a hearing regarding the status of several county roads and whether the county would vacate such roads following a survey conducted at the county board's request. In the resolution dated December 16, 1986, the county board resolved in pertinent part to vacate "[t]hat part of Road No. 50 commencing at the Northeast Corner of Section 16, Township 32, Range 49, running East to the Southeast corner of Section 11." In addition to the vacation of that part of County Road 50, the county board further declared "[t]hat part of Road No. 19 commencing at the Northeast Corner of Section 11, Township 32, Range 49 West, thence south a distance of two miles" "to be [a] minimum-maintenance road[] . . . closed and vacated to public travel" save for "ingress and egress for agricultural purposes."

We observe that while the previously quoted section of the county board's resolution refers to "Road No. 19," the provided legal description matches the legal description of the disputed road. The deposition testimony of Janice German, a title abstractor, indicated that there was some "overlap" in the legal descriptions for "Road No. 19" and County Road 50, as well as other public roads established by the county.

(d) Construction and Maintenance of Driveway

Mai acquired plots of land in Section 11 and Section 14 (located directly south of Section 11) in a series of transactions from 1999 through 2009. Mai stated that when he acquired Section 14 and parts of Section 11, the "trail road" providing access to the properties from Buttermilk Road consisted of a "series of ruts" and "tracks" beginning from a gap in the fence line, and "[n]o maintenance or dirt work was apparent." According to Mai and Amack, this road existed between the boundaries of Section 11 and Section 12, although it was "assum[ed] that it was on [Amack's] land." Field notes taken by a surveyor in 1992 indicate that the intersection of Sections 1, 2, 11, and 12 was marked by the intersection of two "gravel roads": one running east to west and one running from north to south. Several aerial photographs received as exhibits indicate that a visible road existed along the section line between Sections 11 and 12 as early as 1961. Multiple surveys conducted also evidence the presence of a road beginning in 1964 along the section line between Sections 11 and 12, and several of these surveys label this road as a county road.

Following his acquisition of the parcels in Section 14 and Section 11, Mai initiated construction of improvements to the trail road. From 1999 until 2016, Mai engaged in the improvement and maintenance of the road with his own labor force and with hired contractors. Such improvements included raising and leveling the road, laying red rock for the road surface, and installing culverts and other infrastructure along the road. Additional gates and cattle guards were also installed along the road during this time. He characterized these improvements as an "all-in-one-process in phases" in which the work did not "start[] on one end [of the road] or the other." Mai paid for all expenditures related to these improvements. During this time period, Mai instructed his employees to "challenge and evict anyone who came down the road for any reason without permission," and Mai posted several "No trespassing" signs along the road. No sign was posted at the intersection of the road with Buttermilk Road.

(e) 2016 Events

In February 2016, the Lechers sought to acquire a permit to construct a driveway from their property in the northwest corner of the northwest quarter of Section 12 to the road improved by Mai. Larry Hankin, the Dawes County Road Superintendent, issued a permit to the Lechers that same month, and the Lechers began construction of their driveway shortly thereafter. Hankin was subsequently asked by the Dawes County Board of Commissioners to conduct a road study of "[t]hat part of County Road No. 50 described as: Commencing at the southeast corner of Section 11, Township 32 North, Range 49 West 6th P.M.; thence north to the northeast corner of Section 11, Township 32 North, Range 49 West of the 6th P.M., Dawes County, Nebraska." Hankin also issued a permit to the Shumways to construct a driveway from their property in the southwest quarter of Section 12 to the road improved by Mai.

After the road report was filed on May 25, 2016, a survey of County Road 50 was prepared by Phil Curd. Following a public hearing on July 12, the Dawes County Commissioners partially vacated County Road 50 by Resolution 2016-26, dated August 23, 2016. Pursuant to the resolution, Dawes County vacated County Road 50 "from a point 1647 feet north of the south boundary of Section 11, Township 32 North, Range 49 West, continuing in a southerly direction ending on the south boundary of Section 11, Township 32 North, Range 49 West 6th P.M., Dawes County, Nebraska." The remaining portion of County Road 50 running south from Buttermilk Road "to a point 1647 feet north from the south boundary line of Section 11" remained open, and the driveways proposed by the Lechers and Shumways were both to the north of the vacated portion of County Road 50.

## 2. PROCEDURAL BACKGROUND

### (a) Pleadings

On October 17, 2016, Mai filed a complaint seeking to quiet title and for other injunctive relief against the Lechers, the Shumways, and Dawes County. An amended complaint was subsequently filed on January 16, 2018. Mai alleged that although there was evidence of a petition filed in 1887, Dawes County did not fully comply with Nebraska statutes to establish a public road, and therefore, the road at issue was a private road subject to his control. He alternatively asserted that Dawes County should be estopped from asserting a claim on the road because Dawes County vacated part of the road in 1986 and otherwise failed to maintain the road. Mai further requested, to the extent that the Lechers and the Shumways may have had claims on the road, that the district court quiet title in his favor and enjoin the Lechers and the Shumways from further trespass. Mai's final claim requested that if the district court found that a public road had been created by the "action of Larry Hankin and the [Dawes] County Commissioners," then he would be entitled to an award of his expenditures in constructing the road and the value of the land thereby taken.

On February 13, 2018, the Lechers filed an answer and counterclaim to the amended complaint. The Lechers denied the allegations in Mai's complaint, claiming that a public road was established by petition in 1887. In their counterclaim, the Lechers requested that the district court find that they had a "public prescriptive easement" to use the road due to the road's historical public use. They also alleged Mai's complaint to be frivolous and requested reasonable attorney fees.

On February 15, 2018, the Shumways filed an answer and counterclaim to the amended complaint. The Shumways denied the allegations in Mai's complaint, echoing the Lechers' claims that a public road had been established. They further requested in the alternative that the district court find that they had an easement over that portion of the road running south from Buttermilk Road and to enjoin Mai from interfering with their use of the road. The Shumways also alleged Mai's complaint to be frivolous and requested an award of reasonable attorney fees.

Also on February 15, 2018, Dawes County filed an answer and counterclaim to the amended complaint. Dawes County denied Mai's claims and maintained that a public road had been properly established by petition in 1887. The county further requested that the district court enjoin Mai from posting signage along the road or otherwise impeding public access.

The parties thereafter filed competing motions for summary judgment. A hearing was held on March 1, 2019, and evidence was received. We will discuss the evidence pertinent to the issues on appeal in our analysis below.

The district court entered an order on April 12, 2019, granting summary judgment in favor of the appellees and denying Mai's motion for summary judgment. The court's order concerned two primary issues: (1) whether County Road 50 had been properly established in accordance with the relevant statutes in force in 1887, and (2) whether the evidence established that County Road 50 was used by the public and was never vacated or abandoned by Dawes County.

The district court first determined that County Road 50 was properly established as a public county road in 1887. Finding that County Road 50 had been established by petition, the court stated:

> The evidence shows that on April 22, 1887, twenty-seven (27) petitioners filed a Petition with the Dawes County Commissioners proposing that County Road 50 be both "established" and "opened" as a public road. The law at the time only required 10 petitioners. One of the petitioners, Electa M. Younglove, signed a hand-written note on the Petition which reads "I hereby give the right of way for road to keep upon hill at southeast corner of Section 11 in order to save expense of grading on the hill." . . . Examination of the deed records, including receiver's receipts and patents, and comparing these records to the names and signatures of petitioners, it is clear that those who signed the Petition were landowners in the immediate vicinity of County Road 50.
>
> Although no survey was done, it was unnecessary. In 1882 a governmental survey was conducted in the geographical area that became Dawes County. This survey established section lines located within Township 32 North, Range 49 West of the 6th P.M. . . . This survey was completed a mere 5 years prior to the road petition. There was no need to resurvey section lines for the establishment of County Road 50 and it makes sense that a survey was not completed specifically for County Road 50.
>
> Mai points out that no deposit was made as contemplated by Section 5 [of Chapter 78 of the Compiled Statutes.] Strict compliance with the deposit requirement is also easily explainable. No deposit was required as what would become County Road 50 was already there. The county road records of the county commissioners reflect that on April 23, 1887, they noted that the road was "allowed as preaged." "Preaged" although not a common term today, is defined as "Treated to appear older, usually prior to being used or purchased." Collins' English Dictionary, 12th Ed. (2014). The same records reflect that the Petition came before the board and "was on motion, granted." A plat map reflecting County Road 50 was also included in the county records. . . .
>
> Mai takes issue with the lack of formal process including notice, appraisal and a hearing to determine and pay damages for any taking. In *Barry v. Deloughrey*, 47 Neb. 354, 66 N.W. 410 (1896), the Nebraska Supreme Court held "The county board may, without petition or notice, make a preliminary order establishing a section line road, or declaring that it shall be opened; but before it can actually be opened there must be proceedings upon proper notice to ascertain damages." The Court found this requirement

to be jurisdictional. However, in *Mosier v. Herman*, 113 Neb. 318, 202 N.W. 875 (1925), the Court held that this jurisdictional requirement can be met by written consent or dedication by deed. That is exactly what happened in this case.

Notice was provided in the local Chadron Democrat on Thursday April 28, 1887. This notice contained the proper legal description of County Road 50 and the action of the County Board granting the petition. An appraisal and hearing on damages would only be necessary if a claim was made. The records of the County Clerk and the records of the District Court show that no claims for compensation were made with respect to County Road 50 despite the public notice filed in the Chadron Democrat. . . . Lack of claims together with 27 signatures of landowners in the immediate vicinity of County Road 50 supports a finding that the road was consented to.

The district court then found that there was no genuine issue of material fact that County Road 50 was "properly opened by Petition."

The district court further determined that the "same evidence establishes that County Road 50 was also opened as a 'consent road.'" Citing to Ch. 78, Comp. Stat. § 37 (1887), the court found that the signed petition to establish County Road 50 was "clear evidence of consent on the part of the landowners where the road was located. A specific dedication also exists in which Electa Younglove specifically granted permission for the road to deviate around a hill in order to 'save expense of grading on the hill.'" The court also determined that the evidence "showing that the road was already in existence" and that no claims for damages were made "despite notice in the Chadron Democrat" proved there was no genuine issue of material fact that "the landowners in Dawes County in 1887 made a clear manifestation of their intention and desire to make what is now called County Road 50 an open and public road." The court further found that the approval of the petition and subsequent publication in the Chadron Democrat established that the road was determined by the Dawes County Commissioners to be "'of sufficient public importance.'"

The district court concluded its analysis by finding that there was no genuine issue of material fact that the "public accepted and used County Road 50 and there has been no unqualified vacation of the roadway by the Dawes County Board of Commissioners." The court cited to "records of the Dawes County Clerk," two atlases, and the "General Highway and Transportation Map of 1938" as evidence that County Road 50 was "available to the public for travel," as well as several affidavits stating that the affiants had "observed Dawes County maintaining County Road 50 at various times in the past" and had used the road for hunting purposes and for access to grazing grounds. The court noted that while this maintenance had "significantly diminished after approximately 1980," such reduction in maintenance did not cause the road to lose its public character in the absence of an "unqualified vacation of the roadway by the county board." The court observed that Dawes County had only partially vacated County Road 50 in 1986 and 2016, and thus County Road 50 remained a public road "except as partially vacated by Resolution 2016-26."

The district court then described that "Dawes County's right and interest in County Road 50 begins with its west edge on the Section line between Sections 11 and 12 and extends 66 feet east into Section 12, Township 32, Range 44, of Dawes County, Nebraska." Having found that County Road 50 "belongs to Dawes County," the court concluded that Mai's claims against the

Lechers, the Shumways, and Dawes County all failed, as his claims were "dependent on the claim that County Road 50 was not an open public road at the time the Lecher and Shumway Defendants were granted access permits."

The Shumways filed a motion to reconsider and revise or supplement the April 12, 2019, order. Mai thereafter filed a motion to vacate the April 12 order.

In an order entered on October 1, 2019, the district court denied the Shumways' motion to reconsider. However, the court, after "re-reviewing the record and argument of the parties," concluded that "it should [not] have attempted to provide a precise location for County Road 50. . . . There are genuine issues of material fact as to the location of County Road 50. The location of the Road will be an issue at trial." The court held that there remained "no genuine issues of material fact that the north/south portion of County Road 50 was established and remains a public county road except as partially vacated by Resolution 2016-26."

(c) Trial

Trial was held from March 1, 2021, until March 4. "[O]nly two issues remained at trial: (1) the precise location of County Road 50; and (2) resolution of the injunctive relief sought by Dawes County requesting removal of obstructions by [Mai] in the County right of way." Evidence was adduced, including the testimony of various individuals who had used or otherwise knew of the road throughout several decades in various capacities.

In an order entered on July 27, 2021, the district court held that the evidence established that the physical road in existence "runs north and south generally along the section line dividing Sections 11 and 12 in Township 32, Range 49 in Dawes County, Nebraska." The court found that the surveyors' testimony showed that County Road 50 commences at the north section corner of Section 11 and Section 12 on the Section 12 side of the section line. The court then further described:

> The road crosses into Section 11 at a point approximately 625 feet south of that north section corner. The road is then in Section 11 to a point north of the third cattle guard or near the point of abandonment. At that point, the road is back completely into Section 12. The greatest distance that the road is in Section 11 is 12 feet near the first cattle guard.

With respect to Dawes County's right of way in County Road 50, the court held that the "County right-of-way extends 33 feet on each side of the section line," and the physical road, while crossing in between Section 11 and Section 12, was "within the 66-foot right-of-way" for its entire length.

The district court then, based on the April 12, 2019, order granting summary judgment and its previously described findings, granted Dawes County's request for a permanent injunction and ordered Mai to remove his sign and all other obstructions from the right-of-way. The court then denied all other pending motions save for the motion for attorney fees.

Subsequently, on August 30, 2021, the district court entered an order denying the parties' requested attorney fees.

Mai appeals.

### III. ASSIGNMENTS OF ERROR

Mai claims, reordered, that the district court erred in: (1) granting the appellees' motions for summary judgment because Dawes County failed to prove that County Road 50 was established as a public road by petition as required by applicable law; (2) granting the appellees' motions for summary judgment because the 1887 petition was not a written consent to transfer particular property to Dawes County in order to establish a road or a waiver of the right to just compensation; (3) making findings of fact on summary judgment as to public use of the road when the record showed genuine issues of material fact for trial; (4) receiving and relying upon inadmissible maps over Mai's objection on summary judgment; (5) granting summary judgment without proof that the location of the road was established in 1887; and (6) restricting the issue at trial to the question of the road's present physical location.

### IV. STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022). An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.*

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

### V. ANALYSIS

#### 1. ESTABLISHMENT OF COUNTY ROAD 50

We consolidate Mai's first three assignments of error under this heading since they all relate to whether the district court could determine as a matter of law that County Road 50 had been properly established as a public county road based on the evidence presented. As stated in the court's April 12, 2019, order granting summary judgment in favor of the Lechers, the Shumways, and Dawes County, "Despite the abundance of evidence offered and reviewed by the Court, the issue determinative to all pending motions is simple: is County Road 50, or as Mai would like to call it[,] 'the Mai Driveway,' a public open county road or is it private property belonging to Mai." The court concluded as a matter of law that County Road 50 was properly established and was therefore "a public county road except as partially vacated," and not private property. We agree.

#### (a) Legal Principles

Presently, and as pertinent here, Neb. Rev. Stat. § 39-1401(2) (Reissue 2016) provides that "[p]ublic roads" include "all roads within this state which have been laid out in pursuance of any law of this state, and which have not been vacated in pursuance of law, and all roads located and opened by the county board of any county and traveled for more than 10 years."

- 9 -

This matter requires examining the statutes in force at the time that County Road 50 is alleged to have been established in 1887. Pursuant to Ch. 78, Comp. Stat. § 1 (1887), the Dawes County Board was given the authority to establish and maintain public roads within the county. For a public road to be established by petition, "a petition signed by at least ten electors residing within five miles of the road proposed to be established or vacated" must file a petition in the county clerk's office. See Ch. 78, Comp. Stat. § 4 (1887). "[A]t the time of filing their petition," the petitioners "shall . . . deposit with the county clerk a sufficient sum of money to pay for the laying out or alteration of such road, the expenses thereof to be paid out of such deposit, unless the road is finally established or altered." Ch. 78, Comp. Stat. § 5 (1887). The county clerk shall then "appoint some suitable and disinterested elector of the county a commissioner to examine into the expediency of the proposed road, alteration, or vacation thereof, and report accordingly." Ch. 78, Comp. Stat. § 6 (1887). If the commissioner's report favors the establishment or alteration of the road, "[n]otice shall be published for four weeks in some newspaper published in the county, if any such there be," or otherwise "posted in at least three public places along the line of said proposed road." Ch. 78, Comp. Stat. § 18 (1887). All objections to and claims for damages as a result of the road "must be in writing" and filed with the county clerk within a period of 60 to 90 days. See Ch. 78, Comp. Stat. §§ 16 and 22 (1887). See, also, *Graham v. Flynn*, 21 Neb. 229, 233, 31 N.W. 742, 743 (1887) ("[t]he very object of the petition is to secure the location of the road, and the fact that a party signs such a petition for the purpose indicated is sufficient notice to him of the pendency of the proceedings; as to him it is not an adverse proceeding, but is done not with his assent only but at his instance and request"; present landowner's claim that road was not lawfully opened by petition, that landowner had not received any notice of opening of the road, that landowner had no opportunity to apply for compensation, and that no compensation for taking of land had been offered to landowner, was rejected in light of evidence that prior owner of land in controversy signed a petition along with 75 others for the location of the road).

Also, a petition was not always required. Ch. 78, Comp. Stat. § 46 (1887) provided:

The section lines are hereby declared to be public roads in each county in this state, and the county board of such county may, whenever the public good requires it, open such roads without any preliminary survey and cause them to be worked in the same manner as other public roads; Provided, That any damages claimed by reason of the opening of any such road shall be appraised and allowed, as nearly as practicable, in manner hereinbefore provided. And provided further, That the county board before opening such section line road, shall direct the county surveyor to perpetuate the existing government corners along such line by planting monuments of some durable material with suitable witnesses whenever practicable, and make a record of the same.

Roads could also be established as consent roads pursuant to Ch. 78, Comp. Stat. § 37 (1887), which required that the "written consent of all the owners of the land to be used for that purpose be first filed in the county clerk's office; and if . . . shown . . . that the proposed road is of sufficient public importance to be open, [the county board] shall make an order establishing the same."

Although these statutes impose specific requirements on the opening of public roads, the Nebraska Supreme Court has held that strict compliance with statutory procedure is not necessarily required. See *Mosier v. Herman*, 113 Neb. 318, 202 N.W. 875 (1925). It must be conceded that

where the county has made an attempt to establish, however irregular, and such attempt has been followed by an opening and using of the road contemplated, with the knowledge and consent of the adjoining landowners, the courts of Nebraska have been exceedingly loath to deny the existence of the road as a public road. *Id.* However, requirements such as notice and just compensation in the absence of consent or public use for the prescriptive period to establish an easement by prescription remain necessary. See *id.* (proceedings upon proper notice to ascertain damages required in absence of written consent, dedication by deed, or public use for prescriptive period to establish easement by prescription). See, also, *Breiner v. Holt County*, 7 Neb. App. 132, 581 N.W.2d 89 (1998) (prescriptive easement acquired through adverse use by public of road in question; where public road established by proceedings under applicable statute, and opened and traveled by public for more than 10 years, public thereby acquires an easement, and court will not examine original proceedings to determine if they were valid).

A county board may, without petition or notice, make a preliminary order establishing a section line road, by declaring that it shall be opened, but before it can be actually opened there must be proceedings upon proper notice to ascertain damages. *County of Banner v. Young*, 184 Neb. 546, 169 N.W.2d 280 (1969) (evidence insufficient to establish road when only evidence produced were minutes of meeting of board of county commissioners indicating that consent roads were established; no attempt was made to determine existence of road plat-book which county clerk was required to keep). Proper notice "appears to be jurisdictional in the absence of written consent or dedication by deed." *Id.* at 549, 169 N.W.2d at 282. If the jurisdictional requirements have not been met, "the right does not exist and lapse of time will not supply the defect." *Id.* Further, the act of filing a petition does not, on its own, serve to waive the petitioners' rights to compensation, nor does a petitioner's failure to make a claim for damages in and of itself excuse the authorities from compensating the petitioner. See *Anderson v. Nelson*, 86 Neb. 752, 126 N.W. 314 (1910) (land owner petitioning to open road (joined by 29 others) did not waive right to demand compensation for his land taken for highway purposes by filing petition; failure to file claim for damages likewise did not excuse authorities from giving compensation, but fact that petitioner did not file such claim for damages was relevant to determination that land owner dedicated the land in controversy for road purposes).

(b) Acts of County Board and Petitioners

Mai contends the district court erred in finding that the record demonstrated that County Road 50 had been properly established as a public road in accordance with Nebraska law. He notes that the "key jurisdictional act to establish a public road is compliance with the due process of law for the taking of private property for a public purpose." Brief for appellant at 18. Mai argues that "[w]ithout proof of completion of this process," referring to the giving of notice and ascertaining of damages to landowners affected by the opening of the public road, Dawes County "had no statutory authority to take property for a public purpose by petition or as a section line road." *Id.* at 19. He also directs this court to several other alleged defects in complying with statutory requirements, including the record's silence on whether a commissioner was appointed and Dawes County's failure to prove full compliance with the statutory notice provision.

It is clear that the petition filed by the electors and landowners within 5 miles of the proposed County Road 50 was granted by the county board on April 23, 1887, and was recorded

in the Dawes County Road Record as County Road 50. Further, a copy of the Road Record provides the legal description for the road and contains a "Road Plat Record" in which the location of the road was platted. Although the record does not show that all statutory procedures were complied with to establish a road by petition, this inadequacy may be a result of the passage of time from 1887. Regardless, we find the record demonstrates that the acts of the Dawes County Board of Commissioners and the petitioners met the mandatory requirements of due process described in *Mosier v. Herman*, *supra*, and *County of Banner v. Young, supra*, as set forth previously. The petition adequately demonstrates the intent of the landowners to dedicate their property to a public road, as they would not have filed such a petition in the absence of that intent. Mai raises claims concerning particular failures in statutory procedure, most notably in the notice given by the county board and in the lack of appraisal and payment of damages. With respect to notice, we note, as the appellees point out, that each of the petitioners whose real property would be burdened by the taking of land for County Road 50 had actual notice through the petition they filed. Even though the statutory procedure of posting notice in a newspaper or a public place was not satisfied, actual notice through the petition is sufficient in this case. See *Graham v. Flynn*, 21 Neb. 229, 233, 31 N.W. 742, 743 (1887) ("We know of no rule that would require a petitioner to serve a notice upon himself. The very object of the petition to secure the location of the road, and the fact that a party signed such petition for the purpose indicated, is sufficient notice to him of the pendency of the proceeding.").

Further, while the act of signing a petition to establish a public road does not alone constitute a waiver for damages, see *Anderson v. Nelson, supra*, the filed petition coupled with the lack of evidence of any filed claims for damages satisfies the appellees' burden to make a prima facie case that (1) sufficient notice was given to the petitioners regarding potential claims for damages and (2) the petitioners consented to the opening of the road and elected to not seek damages. Mai does not direct us to any evidence disputing these conclusions, and we accordingly find that there is no genuine issue of material fact regarding the establishment of County Road 50 by petition. See *Sulu v. Magana*, 293 Neb. 148, 879 N.W.2d 674 (2016) (when moving party makes prima facie case for summary judgment, opposing party must show existence of material issue of fact preventing judgment as a matter of law; conclusions based on guess, speculation, conjecture, or choice of possibilities do not create material issues of fact).

We further find that, even if County Road 50 was not properly established by petition, summary judgment in favor of the appellees was still appropriate in this case because County Road 50 was opened as a section line road. As noted previously, ch. 78 Comp. Stat. § 46 declared all section lines to be public roads, and such roads may be opened to the public when the county board determines that "the public good requires it." We find that the uncontroverted evidence that the Dawes County Board granted the petition to open County Road 50 substantially demonstrates that the county board believed it to be in service to the public good. Further, ch. 78 Comp. Stat. § 46 also required that there be notice given and there be the appraisal and allowance of damages to the burdened landowners. We previously set forth the facts establishing that notice and the opportunity to pursue damages were given in this case, and those facts apply with equal force in the opening of County Road 50 as a section line road. Further, to the extent that ch. 78 Comp. Stat. § 46 requires the county board to "direct the county surveyor to perpetuate the existing government corners along such line, by planting monuments of some durable material," such acts were undertaken

during the course of the 1882 government survey of the county, and as the district court noted, it was unnecessary for the county to resurvey the section lines to establish County Road 50. Accordingly, there is no genuine issue of material fact that County Road 50 was alternatively opened as a section line road.

(c) Acceptance by Public and Vacation by County Board

As Mai concedes on appeal, the question of whether a road was accepted and used by the public is "irrelevant," reply brief for appellant at 8, upon a finding that a public road was formally established. Pursuant to Neb. Rev. Stat. § 39-1401(2) (Reissue 2016), a public road is any road which has "been laid out in pursuance of any law of this state, and which have not been vacated in pursuance of law," or otherwise "located and opened by the county board of any county and traveled for more than ten years." Because County Road 50 was established by petition and as a section line road in conformance with Nebraska law, we need not address this issue further.

However, Mai claims that there is an issue of material fact concerning whether or not County Road 50 was vacated by the 1986 resolution. As noted previously, there appears to be some amount of overlap between County Road 50 and "Road No. 19" given the legal descriptions of the roads set forth in the 1986 resolution. In this resolution, part of "Road No. 19" "commencing at the Northeast Corner of Section 11 . . . thence south a distance of two miles" was converted into a minimum maintenance road and "closed and vacated to public travel," save for "ingress and egress for agricultural purposes." This legal description runs over the same section line between Section 11 and Section 12 as County Road 50 as set forth in the 1887 petition and "Road Record."

Once established, a public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013). A roadway is generally said to be vacated when its existence is terminated by direct action of public authorities. See *id.* To "[a]bandon" a roadway "means to reject all or part of the department's rights and responsibilities relating to all or part of a fragment, section, or route on the state highway system." Neb. Rev. Stat. § 39-1302(1) (Reissue 1984). However, the Nebraska Supreme Court has held that "for a road to lose its public character under § 39-1401(2), there must be an unqualified vacation of the road." *Blaser v. County of Madison, supra*, 285 Neb. at 306, 826 N.W.2d at 566. A county board may take steps to vacate a road completely, in which case the roadway would lose its public character, or a county board may vacate a road with qualifications such as retention of the right-of-way, in which case the road within the right-of-way retains its public character. See *Blaser v. County of Madison, supra*.

We find that, regardless of whether labeled as County Road 50 or "Road No. 19," the part of the 1986 resolution referring to "Road No. 19" describes the road presently in dispute. We further observe that the 1986 resolution, as pertinent to this case, vacated the disputed road with the qualification that the right-of-way be retained by Dawes County. The road therefore has retained its public character pursuant to *Blaser v. County of Madison, supra*, because there was no unqualified vacation of the road. While Mai attempts to create a distinction between a "road" and "right-of-way," we are not persuaded that such a distinction has any bearing on whether a public road remains in this case. See § 39-1302(21) ("Road shall mean a public way for purposes of vehicular travel, including the entire area within the right-of-way."). In addition, a public road may not be adversely possessed by a private individual. See Neb. Rev. Stat. § 39-1404 (Reissue 2016).

There is no genuine issue of material fact that the disputed road did not lose its public character by Resolution 1986-26.

We also find that the 2016 resolution partially vacating County Road 50 "from a point 1647 feet north of the south boundary of Section 11 . . . continuing in a southerly direction ending on the south boundary of Section 11" did not constitute an unqualified vacation of County Road 50 for any part of the road north of that "point 1647 feet north of the south boundary of Section 11." Resolution 2016-26 did not address any other part of County Road 50, and there is accordingly no genuine issue of material fact that this resolution did not cause this remaining portion of County Road 50 to lose its public character.

## 2. ADMISSIBILITY OF ROAD MAPS ON SUMMARY JUDGMENT

Mai contends that the district court erred in admitting and using three particular maps showing the existence of the disputed road in its order granting summary judgment. He argues that these maps were inadmissible under the Nebraska Rules of evidence and the case of *Worm v. Crowell*, 165 Neb. 713, 727, 87 N.W.2d 384, 393 (1958). As Mai alleges, these maps included two maps from atlases and a "1938 general transportation map," all privately published. Brief for appellant at 25. Mai claims that these maps were inadmissible because they "were made by private map producers and the originals or complete copies were not produced" and thus did not satisfy the ancient documents rule. *Id.* He further argues that there was "no foundation showing these maps portray public roads only." *Id*.

Even assuming that the maps were improperly admitted and relied upon by the district court, we find that the admission of these maps does not constitute reversible error. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020). Erroneous admission of evidence does not require reversal if the evidence is cumulative or other relevant evidence, properly admitted, supports the finding by the trier of fact. *Id.* Here, we note that several plat maps and surveys, constituting government records, were received into evidence, including the plat map created following the establishment of County Road 50. We find that the admission of the maps identified by Mai was cumulative in the shadow of the plat maps received into the record without objection. Moreover, any erroneous admission of these maps has no bearing on the propriety of summary judgment in favor of the appellees, as these maps were only relevant to demonstrate the public use of County Road 50. We have already determined that County Road 50 was formally established as a public road by petition and as a section line road, and the question of whether the road was accepted and used by the public is not relevant in this case where the road was so established. Accordingly, any error by the district court was harmless and did not impact Mai's substantial rights.

## 3. SUMMARY JUDGMENT WITHOUT PROOF OF ROAD'S LOCATION

Mai claims that the district court could not grant the appellees' motions for summary judgment without determining the location of the road. He asserts that the "location of a road formally established is an essential prerequisite for there to be a road." Brief for appellant at 30. He argues that a "road cannot exist without a permanent and definite location," and, noting the

absence of markers or monuments laying out the road, "[i]f the road was not located in 1887, then there can be no road based on the 1887 petition." *Id.* at 31.

Upon our review of the record, we are not persuaded that the district court entered summary judgment without proof of the road's location. The court initially held that "Dawes County's right and interest in County Road 50 begins with its west edge on the Section Line between Sections 11 and 12 and extends 66 feet east into Section 12." It is also true that in its order entered on October 1, 2019, the court found as follows:

> In re-reviewing the record and argument of the parties, this Court does not believe it should have attempted to provide a precise location for County Road 50. The record is replete with conflicts as to the location of the road. There are genuine issues of material fact as to the location of County Road 50. The location of the Road will be an issue at trial.
>
> The Court stands by its previous ruling that there are no genuine issues of material fact that north/south portion of County Road 50 was established and remains a public county road except as partially vacated by Resolution 2016-26.

However, it is apparent from the record that the general location of County Road 50 was established on summary judgment as running north to south along the section line between Section 11 and Section 12 as set forth in the 1887 petition, the county "Road Record," the records of the surveys conducted beginning in 1882, and the plat maps included in the affidavit of the Dawes County Clerk. Although the width of County Road 50 was not set forth in the petition or "Road Record," ch. 78 Comp. Stat. § 2 (1887) dictates that, at the time of the petition, "[a]ll public roads shall have a width of sixty-six feet," and "the staked line marking such road shall be on the . . . western edge, if the course of the road is north and south." The location of this section line remained undisputed both on summary judgment and at trial, as evidenced by the surveys conducted from 1882 to the present.

The district court limited the issue at trial to the precise location of County Road 50, and we note there are two sub-parts to this issue: (1) the precise nature of Dawes County's right-of-way as related to the section line between Section 11 and Section 12 and (2) whether the physical road was located within the confines of the county's right-of-way. We find that the court's findings regarding the general location along the section line were sufficient to support its grant of summary judgment, and it was not necessary for the court to determine the precise location of County Road 50 on summary judgment. Accordingly, the district court did not err in granting the appellees' motions for summary judgment despite not precisely locating County Road 50.

4. LIMITATION OF EVIDENCE RECEIVED AT TRIAL TO ROAD'S PHYSICAL LOCATION

Mai asserts that the district court erred in limiting the evidence received at trial to evidence of "the location of the road in 2021" and "steadfastly refus[ing] to hear anything about whether the County had located and opened a road in 1887." Brief for appellant at 33. He claims that "[t]his abuse of discretion limited trial to a foregone conclusion" in favor of the appellees, and ended with the court "creat[ing] a thirty-three foot right of way along an inaccurate survey line drawn by Dawes County after the dispute started." *Id.* Mai argues that the issue at trial should have been "whether the legal proceedings in 1887 opened and located a road to make it a public road." *Id.*

- 15 -

Mai directs our attention to three instances in which the district court ruled against his introduction of evidence and offer of proof. First, Mai attempted to introduce evidence of a recorded private easement located "where the so-called County Road 50" is also located. Second, he offered evidence concerning the location and presence of barricades and gates along the portion of County Road 50 vacated prior to this dispute. Third, in making an offer of proof regarding this evidence, Mai's counsel described that this evidence was "relevant to consideration of [whether] there [was], in fact, ever a County Road 50," and the court reiterated that it would not "allow evidence on whether or not this is a county road or not" because it had "already determined" that a county road existed.

Mai appears to contest the district court's limitation of the scope of the trial to the present location of County Road 50, and he premises this argument on the assertion that the court erred in finding on summary judgment that County Road 50 was established. However, as set forth previously, we have found that the court did not err in finding on summary judgment that County Road 50 was properly established. When a case is not fully adjudicated on a motion for summary judgment, the facts identified as appearing "without substantial controversy" on summary judgment will, upon trial, "be deemed established, and the trial shall be conducted accordingly." Neb. Rev. Stat. § 25-1333 (Reissue 2016). The court had previously established the facts supporting the establishment of County Road 50, and we have affirmed its grant of summary judgment on that issue. To the extent that Mai attempted to introduce evidence relating to the question of whether County Road 50 had been established, such evidence was not relevant to the questions to be resolved at trial. It was therefore not error to limit trial to the precise location of County Road 50 because such issue and its subparts were the only remaining issues concerning the nature of County Road 50 to be resolved.

## VI. CONCLUSION

For the reasons set forth above, we affirm the orders entered by the district court.

AFFIRMED.

(*See page 17 for appendix A.*)

APPENDIX A

| Sec 4 | Sec 3 | Sec 2 | | Sec 1 | |
|---|---|---|---|---|---|
| | | Buttermilk Road | | | |
| Sec 9 | Sec 10 | NW | NE<br>Mai<br>(2009) | NW<br>Lecher<br><br>Amack | NE<br><br>Sec 12 |
| | | Sec 11 | | | |
| | | SW | SE<br>Mai<br>(2000) | SW<br>Shumway | SE |
| | | Road 50 east/west | | | |
| Sec 16 | Sec 15 | Sec 14<br>Mai<br>(1999) | | Sec 13 | |

(Road 50 north/south runs vertically between the center columns and Sec 12 block.)